UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| NEO NETWORK, INC., | |
| Plaintiff, | |
| v. | Case No. 25-cv-12745 |
| CITY OF DETROIT, et al., | Honorable Robert J. White |
| Defendants. | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 23)**

Plaintiff Neo Network, Inc. (Neo) is a telecommunications carrier that purchased ownership rights in fiber assets that included fiber segments installed in conduit owned or controlled by Defendant the City of Detroit (the City). (ECF No. 1, PageID.3). Neo claimed that since its purchase, the City and the individual Defendants, John Prymack, Victor Moncivais, and Arthur Thompson, all of whom are City employees, have refused to provide Neo with an access agreement to the City's conduit. (*Id.* at PageID.4). Without an access agreement, Neo cannot use or operate its fiber segments that are installed in the City's conduit. (*Id.*).

Neo initiated this lawsuit based on the Defendants' alleged failure to grant Neo access to the City's conduit. (*Id.* at PageID.4–5). Presently before the Court is

the Defendants' motion for judgment on the pleadings and to dismiss certain claims for lack of subject matter jurisdiction. (ECF No. 23). For the reasons explained below, the Court will grant in part and deny in part the Defendants' motion.[1]

## I. Background

Neo is a telecommunications carrier certified to provide service in Michigan. (ECF No. 1, PageID.3). Prymack is the Director of the City's Public Lighting Department and Thompson is the Chief Information Officer (CIO) for the City. (*Id.* at PageID.2; ECF No. 23, PageID.181). Defendant Victor Moncivais is an attorney in the City's Legal Department. (ECF No. 1, PageID.2).

Prior to the lawsuit, Neo purchased fiber assets installed in the City's conduit. (*Id.* at PageID.3). But to access and use the fiber to serve local customers, Neo needed the City's permission. (*Id.*). Neo first alerted Prymack and Thompson, and thereby the City, that it purchased the rights to certain fiber segments in the City's conduit on May 30, 2024. (*Id.*). That same day, and on multiple occasions thereafter, Neo requested the City provide it with a conduit use agreement. (*Id.* at PageID.4). In fact, between April 2025 and August 29, 2025, Neo reported that it requested a

[1] The Court will decide the motion absent a hearing given that issues of fact are, for the most part, not presently before the Court. *See Stanford v. United States*, 992 F. Supp. 2d 764, 770 (E.D. Ky. 2014) ("Absent complex factual questions, the Court is not required to hold a hearing.") (citing *Cook v. Providence Hosp.*, 820 F.2d 176, 178 (6th Cir. 1987)).

conduit use agreement eleven different times, with all requests in writing. (*Id.*). And even though Moncivais informed Neo that the City was preparing a conduit use agreement, at the time Neo filed its complaint, the City had still not provided such an agreement. (*Id.*). Neo claimed that the Defendants' "substantial delay" in providing a conduit agreement has wrongfully barred Neo from accessing its fiber in the City-owned conduit. (*Id.* at PageID.5).

In its complaint, Neo brought six separate counts against the Defendants. First, Neo claimed that Defendants violated 47 U.S.C. § 253 by refusing to provide Neo access to the conduit while allowing other carriers access. (*Id.* at PageID.6). Second, Neo alleged that § 253 preempts the City's local regulations such that the City cannot prohibit Neo from accessing the conduit, and that the City's enforcement of otherwise preempted regulations harmed Neo. (*Id.* at PageID.6–7). Third, Neo claimed that Defendants tortiously interfered with its business expectancy by barring Neo from accessing fiber Neo owned and affecting Neo's ability to service customers. (*Id.* at PageID.7–8). Fourth, Defendants violated Michigan's Antitrust Reform Act by allegedly conspiring with Neo's competitors to preclude Neo from the market. (*Id.* at PageID.8–9). Fifth, Defendants deprived Neo of its property (the fiber) without due process in violation of Michigan's constitution. (*Id.* at PageID.9). And sixth, Neo requested the Court issue a writ of mandamus to compel Defendants

to provide a standard use agreement for access to the City's conduit. (*Id.* at PageID.10).

Defendants answered the complaint, (ECF No. 9), and subsequently moved for judgment on the pleadings to dismiss all of Neo's claims, (ECF No. 23). Neo opposed the motion. (ECF No. 24).

## II. Legal Standard

A party may move to dismiss for lack of subject-matter jurisdiction at any time. Fed. R. Civ. P. 12(b)(1); *see Henderson ex rel. Henderson v. Shineski*, 562 U.S. 428, 434 (2011) ("Objections to subject-matter jurisdiction . . . may be raised at any time."). The plaintiff "bears the burden of demonstrating jurisdiction" upon a Rule 12(b)(1) motion. *Ladd v. Marchbanks*, 971 F.3d 574, 577 (6th Cir. 2020) (citation omitted). In the motion, the party "can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). If the party launches a factual attack, the court "has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weight the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* at 759–60.

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Courts analyze a motion for judgment on the pleadings by taking "all well-pleaded material allegations of the pleadings of the opposing party" as true. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citation omitted). If the court determines that the moving party is "nevertheless clearly entitled to judgment," then it should grant the motion. *Id.* Overall, "[a] motion brought pursuant to 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Id.* (quoting *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).

In assessing a Rule 12(c) motion, the court may consider "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[].'" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). But the court need not accept legal conclusions or unwarranted factual inferences as true. *Winget*, 510 F.3d at 581–82.

## III. Analysis

Defendants argued that because there is no private cause of action under § 253(a), the Court should dismiss Counts I and II for lack of jurisdiction and failure

to state a claim. (ECF No. 23, PageID.183). And, even if Neo had a valid claim under § 253, qualified immunity shields the individual Defendants from suit. (*Id.* at PageID.187). Similarly, Michigan law provides immunity to the City and the individual Defendants for Neo's tortious interference claim. (*Id.* at PageID.188–93). As for Neo's claims for deprivation of property without due process, violation of the Michigan Antitrust Reform Act, and mandamus relief, these also cannot proceed because Neo has no viable claim or the claim itself is moot. (*Id.* at PageID.194–99).

Neo responded that its claims under § 253 are not limited to those under § 253(a), but include § 253(c) such that its private right of action is not foreclosed. (ECF No. 24, PageID.222). In addition, it is too early for the Court to determine whether Defendants are entitled to immunity under state or federal law, given the motion comes before the Court on the pleadings and without the benefit of discovery. (*Id.* at PageID.231–37). According to Neo, the due process and antitrust claims should survive since a viable cause of action exists under both. (*Id.* at PageID.237–40). And the mandamus relief requested is not moot because the City has yet to provide a non-discriminatory access agreement to Neo. (*Id.* at PageID.240–41).

As explained in further detail below, the Court will grant in part and deny in part Defendants' motion. First, although there is no private right of action for damages under § 253(a), Neo can seek injunctive relief under that section, and Neo stated a cause of action under § 253(c). Second, the Court agrees that the application

of immunity requires further factual development as it relates to Neo's tort claim against Prymack, Thompson, and Moncivais and Neo's federal claims generally. But since the City cannot be held liable for intentional torts, the Court will dismiss the tortious interference claim as to the City. Third, the due process and antitrust claims are subject to dismissal as a matter of law. And fourth, the requested mandamus relief is moot given that Defendants provided Neo a draft access agreement; the fact that Neo may be disgruntled with its terms is insufficient to establish a right to relief.

**A. § 253 Claims**

Neo alleged that Defendants' refusal to provide a conduit use agreement effectively prohibited Neo from using its fiber to provide telecommunications services and thereby violated 47 U.S.C. § 253. (ECF No. 1, PageID.6). Further, § 253 did not just make Defendants' conduct wrongful, but also preempted Defendants' conduct altogether. (*Id.* at PageID.6–7). In response, Defendants argued that the Court should dismiss Counts I and II because Neo does not have a private right of action under § 253(a). (ECF No. 23, PageID.183–87).

Section 253(a) bars state or local statutes or regulations from prohibiting or having the effecting of prohibiting "the ability of any entity to provide any interstate or intrastate telecommunications service." The Court finds that to the extent Neo's claims fall within the ambit of § 253(a), Defendants are correct: "[T]here is no private cause of action available for a violation of § 253(a)." *Superior Commc'ns v.*

*City of Riverview, Mich.*, 881 F.3d 432, 442 (6th Cir. 2018). The statute expressly provides that the Federal Communications Commission (FCC) is responsible for determining whether any statute, regulation, or legal requirement violates subsection (a). § 253(d). If the FCC makes that determination, then it "shall preempt the enforcement of such statute, regulation, or legal requirement to the extent necessary to correct such violation or inconsistency." *Id.* In effect, subsection (d) "indicates that the proper remedy for a § 253(a) violation is preemption by the FCC, not initiation of a private cause of action by an aggrieved telecommunications operator." *Superior*, 881 F.3d at 443. Since Neo's claims involve whether Defendants prohibited Neo from providing telecommunication services, they fall squarely within § 253(a).

Neo offered two arguments for the Court to find that its § 253 claims survive complete dismissal. First, Neo's claim arises under both § 253(a) and (c), and § 253(c) allows for a private right of action. (ECF No. 24, PageID.222–27). Second, § 253(a) and (d) do not foreclose claims for injunctive relief brought by private parties. (*Id.* at PageID.228–31). The Court finds that even though Neo did not specify whether its § 253 claim arose under (a) or (c), the allegations in its complaint support claims under both.

Section 253(c) authorizes state and local governments to "manage the public rights-of-way" and "to require fair and reasonable compensation from

telecommunications providers" so long as the state or locality does so in a "competitively neutral and nondiscriminatory" way. The Sixth Circuit has held that § 253(c) creates "a private right of action in federal court for telecommunications providers aggrieved by a municipality's allegedly discriminatory or allegedly unfair and unreasonable rates." *TCG Detroit v. City of Dearborn*, 206 F.3d 618, 624 (6th Cir. 2000). Here, Neo alleged that the City "is charging communications providers similarly situated to Neo different rates, and in some instances, is not charging and/or is not billing for those providers' use of the City-owned conduit"; that the City is "treating similarly situated carriers differently with regard to access, rates and policies for conduit use" and is therefore "discriminating against Neo"; and that "[o]n information and belief . . . Defendants are providing conduit use agreements to other telecommunications carriers" and not Neo. (ECF No.1, PageID.5–6). All of the listed allegations support a finding that Neo's § 253 claim encompasses violations of § 253(c).

Defendants attempted to argue that Neo does not have a private right of action for damages under § 253(c), given that the *TCG Detroit* case is outdated in light of the Supreme Court's holding in *Gonzaga University v. Doe*, 536 U.S. 273 (2002). (ECF No. 28, PageID.259–61). Plus, the fact that § 253(c) functions as a safe harbor, in that it gives states and localities discretion to manage the public-rights-of-way,

makes it unlikely that the statute confers a private right of action to telecommunications providers. (*Id.* at PageID.261).

In *Gonzaga*, the Supreme Court held that when a statute lacks any indication that Congress intended to create new individual rights, "there is no basis for a private suit, whether under § 1983 or under an implied right of action." 536 U.S. at 286. Still, it is not clear that *Gonzaga* necessarily displaces *TCG Detroit*. The Sixth Circuit has not changed its position since *TCG Detroit*, and the Sixth Circuit's holding is binding on this Court. What is more, the Sixth Circuit in *Superior* recognized *TCG Detroit*'s holding in deciding whether a private cause of action existed under § 253(a). 881 F.3d at 443–44. Indeed, the Sixth Circuit emphasized that "the availability of a § 253(c) private cause of action was solidified by § 253(c)'s *omission* from the FCC enforcement provision in § 253(d)." *Id.* at 443.

Since *Gonzaga*, then, the Sixth Circuit has doubled down on § 253(c) providing a private right of action. And other district courts in the circuit continue to recognize *TCG Detroit*'s holding that § 253(c) creates a private right of action. *Bristol Tenn. Essential Servs. v. United Tel. Se., LLC*, No. 2:13-cv-267, 2015 WL 10096190, at *5–6 (E.D. Tenn. Sept. 30, 2015); *Metro. Gov't of Nashville and Davidson Cnty., Tenn.*, No. 3:08-0621, 2009 WL 10728524, at *3 (M.D. Tenn. Jan. 7, 2009) ("While *TCG Detroit* pre-dated *Gonzaga*, *Gonzaga* did not explicitly or implicitly overrule *TCG Detroit* and that case is the law in this circuit."). Likewise,

courts have allowed claims for injunctive relief under § 253(a) to proceed. *See* 2009 WL 10728524, at *3 (finding private parties could still seek injunctive relief based on § 253(a)). As such, the Court will not dismiss Counts I and II in their entirety; instead, those counts are dismissed only to the extent that they seek damages under § 253(a). In so deciding, the Court makes no judgment as to the merits of either Count.

**B. Qualified Immunity**

The Court finds that further discovery is needed to determine whether qualified immunity applies here. "Qualified immunity shields federal and state officials from money damages unless a plaintiff alleges facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Cunningham v. Shelby Cnty., Tenn.*, 994 F.3d 761, 764 (6th Cir. 1994). For a right to be clearly established, the right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (citation omitted).

The plaintiff "bears the burden of showing that defendants are not entitled to qualified immunity." *Cunningham*, 994 F.3d at 765. Overall, the doctrine is not "just a defense to liability – it's immunity from the cost and burdens of suit in the first place." *Bell v. City of Southfield, Mich.*, 37 F.4th 362, 364 (6th Cir. 2022). When

properly applied, qualified immunity "'protects all but the plainly incompetent or those who knowingly violate the law.'" *Barkes*, 575 U.S. at 825 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

Defendants argued that qualified immunity protects the individual defendants from suit under § 253. (ECF No. 23, PageID.187–89). The Court already found that Neo cannot seek money damages against the Defendants under § 253(a), so the Court need not consider whether the individual Defendants are entitled to qualified immunity as to that claim. As for § 253(c), qualified immunity may shield the individual Defendants; however, based on the allegations in the complaint, it is unclear whether the individual Defendants are entitled to such immunity.

That is, Neo alleged that the individual Defendants refused to comply with Neo's request for a conduit use agreement in a timely manner. (ECF No. 1, PageID.5). But whether that is borne out by the facts is unclear. The same is true of whether Neo has a right to an access agreement on the terms it suggests, as opposed to those offered by Defendants. In addition, whether the Defendants' failure to provide an access agreement constituted a knowing violation of the law or incompetence is a question of fact better left for resolution at summary judgment. *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) (suggesting that the best time to resolve qualified immunity questions is at summary judgment given the fact-

intensive nature of the test). At this juncture, then, the Court will deny the Defendants' request for qualified immunity as to the § 253 claims.

### C. Tortious Interference Claim

#### 1. The City

Defendants argued that Michigan law immunizes the City from liability for Neo's tortious interference claim. (ECF No. 23, PageID.188–90). Michigan law grants a governmental agency immunity from tort liability "if the governmental agency is engaged in the exercise or discharge of a governmental function." Mich. Comp. Laws § 691.1407(1). The statute defines "governmental function" as "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." § 691.1401(b).

The Michigan Supreme Court construes immunity conferred by the statute broadly. Tort liability as used in § 691.1407(1) "encompasses all legal responsibility for civil wrongs, other than a breach of contract, for which a remedy may be obtained in the form of compensatory damages." *In re Bradley Estate*, 494 Mich. 367, 371 (2013). Still, the statute contains certain "narrowly construed exceptions." *Moraccini v. City of Sterling Heights*, 296 Mich. App. 387, 392 (2012). Accordingly, if a plaintiff "'pleads in avoidance of governmental immunity by stating a claim that fits within a statutory exception,' or pleads that the governmental body was not engaged in a governmental function when it caused the injury," then immunity may

not apply. *Peterson v. Heymes*, 931 F.3d 546, 557–58 (6th Cir. 2019) (quoting *Mack v. City of Detroit*, 467 Mich. 186, 204 (2002)).

Here, Neo claimed that the City's conduct fell within the proprietary function exception. (ECF No. 24, PageID.234). The proprietary function exception excludes from governmental immunity any action "to recover for bodily injury or property damage arising out of the performance of a proprietary function." Mich. Comp. Laws § 691.1413. The statute defines "proprietary function" as "any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency." *Id.* The exception does not apply to "any activity normally supported by taxes or fees." *Id.*

Neo argued that the City engages in a pecuniary function, not supported by taxes, when it rents access to the City's conduit through commercial contracts. (ECF No. 24, PageID.234). Because Neo's claim for tortious interference with a business expectancy arises from that pecuniary function, the proprietary function exception applies. (*Id.*).

Given that Defendants did not address this argument in their reply, the Court, in accepting Neo's allegations as true, finds it plausible that the City's conduct could

fall within the proprietary function exception. The Court will thus deny the motion for judgment on the pleadings on this ground.[2]

Still, Defendants argued that the City cannot be held liable for tortious interference with business expectancy by its employees because that claim is an intentional tort. (ECF No. 23, PageID.192). The Court agrees. The alleged tort requires "'an intentional interference by the defendant,'" *Zerafa v. Hesse*, No. 339409, 2018 WL 4927104, at *4 (Mich. Ct. App. Oct. 9, 2018) (quoting *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83, 90 (2005)). Since the individual Defendants needed to have acted intentionally, then, the City cannot be held liable for their alleged tortious interference. *See Payton v. City of Detroit*, 211 Mich. App. 375, 393 (1995) (finding city "cannot be held liable for the intentional torts of its employees"); *see also Buckley v. City of Westland*, No. 366196, 2024 WL 4865978, at *6 ("the city cannot be held liable for the individual defendants' alleged tortious actions" when those actions are intentional); *Margaris*

[2] Neo's argument that the City was not engaged in a legitimate governmental function when it prevented Neo from obtaining access to the City's rights-of-way is less availing. (ECF No. 24, PageID.235). A "governmental function" per Michigan law is "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL § 691.1401(b). The City's ability to negotiate and issue conduit use agreements falls within its "authority . . . to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers." § 253(c). The possibility that the City offered discriminatory pricing to Neo could serve as a violation of § 253(c), but does not necessarily mean that the City absconded its governmental function in doing so.

*v. Genesee Cnty.*, 324 Mich. App. 111, 126 (2018) (citing *Payton*). As a result, the Court will dismiss this claim against the City.

**2. Prymack and Thompson**

Next, Defendants argued that Prymack and Thompson are shielded from suit under state law because they are entitled to absolute executive immunity. (ECF No. 23, PageID.190–92). Michigan law provides that "the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority." Mich. Comp. Laws § 691.1407(5). Government defendants bear the burden of proving their "entitlement to immunity." *Krawczyk v. Twp. of Hagar*, 673 Fed. App'x 508, 510 (6th Cir. 2016) (quoting *Odom v. Wayne Cnty.*, 482 Mich. 459, 479 (2008)).

Heere, Prymack functions as the Director of the City's Public Lighting Department (PLD) and Thompson serves as the City's Chief Information Officer and is the executive of the City's Department of Information Technology. (ECF No. 1, PageID.2, 4; ECF No. 23, PageID.181). Neo claimed these positions are not the kind entitled to immunity because Prymack and Thompson are "not executives" and "do not have policy-making powers characteristic of high-level apex executives." (ECF No. 24, PageID.236). Rather, according to Neo, "[t]he highest appointive executive official in a municipality like the City typically refers to the city manager,

mayor, or similar position with general executive authority over the entire governmental unit." (*Id.*).

At present, it is unclear whether Prymack and Thompson served as the highest appointive executive officials. To start, the Sixth Circuit has opined that "the absolute immunity provision by its terms seems to contemplate absolute immunity for just one executive official." *Krawczyk*, 673 Fed. App'x at 512. If that were the case, then Neo's argument that the highest appointed executive official includes the mayor or someone in a similar position with general control over the entire governmental unit is persuasive.

Plus, Prymack and Thompson did not offer sufficient evidence that would support their position that they are the highest appointive executive officials, at least not at this stage. Useful information would include whether Prymack and Thompson report to anyone above them, or whether the two can make and implement policy decisions without additional oversight. *See Nalepa v. Plymouth-Canton Comm. Sch. Dist.*, 207 Mich. App. 580, 589–90 (1994) (finding that because the superintendent of the school was "employed by, and answer[ed] only to, the school board, the elective body of the district" the superintendent qualified as the highest appointive executive of the school district). Without such information, the Court is unable to apply absolute executive immunity at this stage of the litigation.

**3. Moncivais**

Among the individual defendants that Neo named in its lawsuit is Senior Assistant Corporation Counsel of the City Law Department, Victor Moncivais. (ECF No. 1, PageID.2; ECF No. 23, PageID.193). Moncivais participated in preparing and negotiating the agreement; in doing so, Moncivais allegedly misled Neo "regarding the City's willingness to provide a conduit use agreement." (ECF No. 1, PageID.2, 4). Neo also claimed that Moncivais's actions violated the Michigan Rules of Professional Conduct. (*Id.* at PageID.4).

Defendants argued that Moncivais is protected by governmental immunity. (ECF No. 23, PageID.193–94). Michigan law affords government employees immunity for tort liability caused by the employee in the course of their employment. Mich. Comp. Laws § 691.1407(2). But if the employee's conduct amounts to "gross negligence that is the proximate cause of the injury or damage," then immunity will not apply. § 691.1407(2)(c). The statute defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." § 691.1407(8)(a). According to Defendants, nothing in the pleadings indicates that Moncivais acted with gross negligence in his role as the transactional attorney for the negotiations. (ECF No. 23, PageID.193).

Neo based its claim against Moncivais on Moncivais' supposed delay in providing a draft conduit use agreement. (ECF No. 1, PageID.4). In its response,

Neo argued against immunity because Moncivais "participated in the activities that deprived Neo of its federal rights." (ECF No. 24, PageID.237). Because "the issue [of] whether a governmental employee's conduct constituted gross negligence under MCL 691.1407 is generally a question of fact," the Court will wait for further factual development before allowing Moncivais to claim immunity. *Tarlea v. Crabtree*, 263 Mich. App. 80, 88 (2004). The Court will thus allow the tortious interference claim to survive as to Moncivais at this juncture.[3]

### D. Due Process Claim

Neo alleged that Defendants deprived it of its constitutionally protected property interest in its fiber assets installed in the City's conduit. (ECF No. 1, PageID.9). Namely, the Defendants allegedly refused to allow Neo access to the conduit "without any formal process, hearing, or legitimate justification, in violation of MCLS Const. Art. I., § 17." (*Id.*). Defendants asked the Court to dismiss Count V because Neo cannot assert a money damages claim against the City or its employees for violation of the Michigan Constitution. (ECF No. 23, PageID.194–95). Neo responded that the Court should construe its claim under the Fourteenth

---

[3] To the extent Neo believes Moncivais violated the rules of professional conduct, then Neo can seek recourse through the Michigan Attorney Grievance Commission but not through this Court. *See In re Mardigian Est.*, 502 Mich. 154, 156–57 (2018) (stating breaches of professional conduct rules "only trigger[] the invocation of the attorney disciplinary process" and are not standalone claims).

Amendment due process clause of the federal Constitution. (ECF No. 24, PageID.237–38). Neo added that "[t]o the extent the Court requires that [Neo] amend its Complaint to restate its claim, [Neo] is prepared to do so." (*Id.* at PageID.238).

The Court will deny Neo's request and dismiss the claim. There is no judicially inferred cause of action for damages against a municipality or its employees under the Michigan Constitution. *See Jones v. Powell*, 462 Mich. 329, 335 (2000). Since Neo pled explicitly that its claim arose under the Michigan Constitution, (ECF No. 1, PageID.9), the Court will not construe Count V as a federal constitutional claim. And although Federal Rule of Civil Procedure 15(a)(2) states that leave to amend should be freely given "when justice so requires," courts will not grant a "bare request" for leave to amend contained in an opposition motion, such as the one here. *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quotation omitted); *see also* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."). To add, the Court's scheduling order makes any motion for leave to amend untimely, considering the deadline for amendment was December 31, 2025. (ECF No. 13, PageID.143). The Court will therefore dismiss Count V.

**E. Michigan Law Antitrust Claim**

Neo claimed that Defendants violated Michigan's Antitrust Reform Act through their de facto exclusion of Neo from the market. (ECF No. 1, PageID.8–9).

According to Neo, the Defendants' refusal to grant Neo an access agreement implies the existence of "a conspiracy to restrain trade and protect incumbent carriers from competition." (*Id.* at PageID.9). Defendants argued that the City is exempt from liability under the Michigan Antitrust Reform Act, Mich. Comp. Laws § 445.771, *et seq*. (ECF No. 23, PageID.195–96).

But the antitrust statute provides that "when the unit of government is acting in a subject matter area in which it is authorized by law to act," the statute cannot be construed to prohibit or render unlawful the government's action. Mich. Comp. Laws § 445.774(3); *see Bio-Magnetic Resonance, Inc. v. Dep't of Pub. Health*, 234 Mich. App. 225, 231 (1999). As an example, the court in *Miranda v. Michigan*, 168 F. Supp. 2d 685, 692 (E.D. Mich. 2001) found that because the Department of Corrections was "expressly authorized by law to promulgate rules regarding the management and control of state penal institutions," its conduct fell within the exception to Michigan's Antitrust Reform Act. Here, 47 U.S.C. § 253(c) authorizes local governments to "manage the public rights-of-way." Neo's claim arises from the City's management of its conduit. As a result, the claim is not viable under § 445.733(3). Whether or not the City violated § 253(c) does not change the fact that the City acted "in a subject matter area in which it is authorized by law to act" for purposes of the antitrust exemption. This claim is dismissed against the City.

**F. Mandamus Relief**

The Court finds Neo's mandamus request moot because the Defendants provided Neo with a draft conduit use agreement to review. Specifically, in its request for mandamus relief, Neo sought to compel the City to provide "a standard conduit use agreement." (ECF No. 1, PageID.10). But Defendants have already provided one; the only barrier at present is the Detroit City Council's approval. (ECF No. 9-1).

According to Neo, the City has "not offered Neo an agreement with substantially similar rates/terms to other providers, whether at a zero rate or no written agreement," so mandamus relief is still necessary despite the provision of an access agreement. (ECF No. 24, PageID.240). Defendants responded that Neo received an offer for the same standard conduit use agreement already available to other carriers. (ECF No. 23, PageID.198; ECF No. 9-1, PageID.58). To prove that the proposed rate aligned with those offered to other carriers, the City provided Neo with four contracts between the City and other carriers that included the same price terms. (ECF No. 9-1, PageID.59–126).

Considering this, Neo's mandamus request is moot. Defendants provided Neo with a conduit use agreement. *See CB by Next Friend Macika v. Livingston Cnty. Cmty. Mental Health*, 349 Mich. App. 253, 261–62 (2023) (finding petition for writ of mandamus moot when defendant began providing care services that plaintiff

requested after lawsuit was filed). Neo can continue to argue that the rates offered were discriminatory, but it cannot dispute that Defendants extended an offer similar to those accepted by other carriers. In denying Neo's mandamus request, the Court finds that the capable of repetition, yet evading review exception to the mootness doctrine does not apply. (ECF No. 24, PageID.241). Ultimately, there is no indication that the Defendants will withdraw and re-send offers for conduit use terms so as to render the matter unreviewable.

* * *

For the reasons given, the Court **ORDERS** that the motion for judgment on the pleadings (ECF No. 23) is **GRANTED IN PART AND DENIED IN PART**.

Dated: August 24, 2026

s/Robert J. White
Robert J. White
United States District Judge